UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

PMI MORTGAGE INSURANCE CO.,

    Plaintiff,

    v.

AMERICAN INTERNATIONAL SPECIALTY LINES INSURANCE COMPANY, FEDERAL INSURANCE COMPANY, and COLUMBIA CASUALTY COMPANY,

    Defendants.

_____/

No. C 02-1774 PJH

**ORDER GRANTING SUMMARY JUDGMENT IN PART AND DENYING SUMMARY JUDGMENT IN PART**

The parties' cross-motions for summary judgment came on for hearing on February 8, 2006 before this court. Plaintiff PMI Mortgage Insurance Co. ("PMI") appeared through its counsel, David B. Goodwin. Defendants American International Specialty Lines Insurance Company ("AISLIC"), Federal Insurance Company ("Federal"), and Columbia Casualty Company ("Columbia") appeared through their respective counsel, Michael J. Quinn, H. Paul Breslin, and Richard M. Williams. Having read all the papers submitted and carefully considered the relevant legal authority, the court hereby GRANTS plaintiff's motion for summary judgment and DENIES defendants' motion for summary judgment, for the reasons stated at the hearing, and as follows.

## BACKGROUND

**A.    Factual Background**

PMI is an insurance company that deals in the mortgage loan industry. In December 1999, PMI was sued in federal court for the Southern District of Georgia in a class action lawsuit (the Baynham action), in which the class plaintiffs alleged that PMI's provision of

mortgage insurance in connection with certain federally related residential mortgage loans violated the Federal Real Estate Settlement Procedures Act ("RESPA"). Specifically, the Baynham plaintiffs alleged that PMI's provision of pool insurance, contract underwriting services, performance notes, and captive reinsurance arrangements with lenders constituted impermissible "kickbacks" under section 8(a) of RESPA. The Baynham plaintiffs filed an original, first amended, and second amended complaint, each of which made similar allegations.

In August 2000, the court granted summary judgment in favor of PMI on the above claim. Subsequent to that, in December 2000, PMI and the Baynham plaintiffs entered into a settlement agreement, the terms of which obligate PMI to pay out $17.6 million. Contemporaneously with the parties' filing of the settlement agreement, the district court allowed the Baynham plaintiffs to file a third amended complaint, which would be contingent upon final approval of the settlement, and which alleged state claims in addition to the RESPA claim. On June 25, 2001, the district court granted final approval of the Baynham settlement.

Believing that certain of its insurance policies covered the Baynham settlement amount, PMI requested indemnification for the settlement amount from the three insurance carrier defendants here – AISLIC, Federal, and Columbia. Defendants refused coverage under all three policies.

**B.   AISLIC Policy**

PMI is insured by AISLIC under a Financial Institution Professional Liability Insurance Policy. Under the terms of the policy, AISLIC agreed to pay PMI up to $10 million in excess of a $200,000 retention for certain losses arising from claims first made against PMI during the policy period as a result of any wrongful act in the rendering or failure to render professional services. See Joint Statement of Undisputed Facts ("UF"), Ex. A, section I.

Under the coverage provision of the policy, AISLIC promises to pay:

2

"The Loss of the Insured arising from a Claim first made against the Insured during the Policy Period or the Discovery Period (if applicable) and reported in writing to the insurer pursuant to the terms of this policy for any actual or alleged Wrongful Act of any Insured in the rendering or failure to render Professional Services."
See id.

Certain relevant exclusions apply, and are set forth in Section IV of the policy. Those exclusions preclude coverage in connection with any claim:

(a) arising out of, based upon or attributable to any in fact conflict of interest or the gaining in fact of any profit or advantage to which an Insured was nor legally entitled;

(b) arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act; and

(e) alleging any Wrongful Act which, as the Continuity Date set forth in Item 5 of the Declarations, any Insured knew or could have reasonably foreseen could lead to a Claim.

See id. at Section IV.

The above exclusions are referred to herein as the "profit or advantage," "criminal or fraudulent act," and "prior knowledge" exclusions, respectively.

**C.   The Federal Policy**

PMI is insured by Federal under an excess insurance policy. Under the terms of that policy, Federal agreed to pay PMI up to $8 million as part of a $20 million "layer of insurance" that is in excess of the insurance provided under the AISLIC policy. See UF 34-36. The Federal policy provides in its provisions shall apply in conformity with the terms, conditions, exclusions and endorsements of the AISLIC policy. Id.

**D.   The Columbia Policy**

PMI is also insured by Columbia under an excess insurance policy. Under the terms of the policy, Columbia agreed to pay PMI up to $6 million as part of the above-referenced $20 million "layer of insurance" in excess of the insurance provided under the AISLIC policy. Id. Again, the Columbia policy provides in its provisions that coverage under it shall apply in conformity with the terms, conditions, exclusions and endorsements of the AISLIC

3

policy.  Id.

### E. Procedural History

On April 15, 2002, plaintiff filed the instant action against all three defendants, alleging that the losses incurred by PMI in the Baynham action fall within the insurers' respective policies, and defendants' improper refusal to indemnify in connection therewith. Specifically, PMI asserts two causes of action: (1) declaratory relief as to defendants' duty to indemnify; and (2) breach of contract for failure to indemnify.  Two months later, in June 2002, the defendants filed answers to PMI's complaint, asserting the applicability of the profit or advantage, criminal or fraudulent act, and prior knowledge exclusions as affirmative defenses.  See AISLIC's Answer to Complaint and Counterclaim for Declaratory Relief ("AISLIC Answer"), ¶ 21; Defendants Federal's and Columbia's Answer to Complaint ("Federal and Columbia Answer"), ¶¶ 37-38, 41-43.  Defendants also asserted, as an affirmative defense, that the Baynham allegations and the Baynham settlement do not constitute a covered "loss" within the terms of defendants' policies.  Id.

Initially, the parties moved for summary judgment on the separate question whether the allegations of the Baynham complaint could be characterized as "wrongful acts" within the meaning of the AISLIC policy (and by extension, the remaining defendants' policies). On March 19, 2003, the court granted summary judgment in favor of defendants on the issue, and entered judgment in favor of AISLIC.  ON May 19, 2003, the court entered judgment in favor of defendants Federal and Columbia.  Thereafter, PMI appealed both decisions in a consolidated action.  The Ninth Circuit reversed, holding that the Baynham action sufficiently alleged "wrongful acts" within the meaning of the policy.  See PMI Mortg. Ins. Co. v. Am. Int'l Specialty Lines Ins. Co. et al., 394 F.3d 761 (9th Cir. 2005).  The Ninth Circuit did not address whether the above exclusions to coverage or other defenses apply, but rather remanded the case for consideration of all issues in light of the Ninth Circuit's decision.

All parties now move for summary judgment.  Plaintiff PMI moves for summary

4

judgment as to (1) applicability of the profit or advantage, criminal or fraudulent act, and prior knowledge exclusions; and (2) whether the Baynham settlement agreement and Third Amended Complaint were the product of improper collusion. Defendants, for their part, move for summary judgment as to (1) applicability of the profit or advantage exclusion; and (2) whether the Baynham alleged a covered "loss" pursuant to the insurance policies at issue.[1]

**DISCUSSION**

A.  Legal Standards

Summary judgment shall be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). Material facts are those which may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. Id. The court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

B.  **Applicability of Relevant Exclusions**

PMI contends that neither the profit or advantage, nor criminal or fraudulent act, nor prior knowledge exclusions preclude coverage for the Baynham claims, and by extension, for the Baynham settlement amount. Defendants dispute this on all counts, though they have moved for summary judgment only as to the unlawful profit or advantage exclusion.

---

[1] The parties have also concurrently filed: (1) requests for judicial notice of certain documents previously filed in the Baynham action; (2) objections to evidence (Defendants only); and (3) a request for administrative leave to file certain documents under seal (PMI only). The court hereby: (1) GRANTS the parties' requests to take judicial notice of the Baynham documents; (2) OVERRULES defendants' objections to evidence; and (3) GRANTS PMI's request to file certain documents under seal.

1. Profit Advantage Exclusion

The profit advantage exclusion precludes coverage for any claim "arising out of, based upon or attributable to any in fact conflict of interest or the gaining in fact of any profit or advantage to which an Insured was not legally entitled." See AISLIC Policy, section 4(a). Defendants contend that, since the Baynham action alleged that PMI participated in unlawful kickback schemes by providing certain valuable services in exchange for primary mortgage business referrals, the action alleged an unlawful profit or advantage, and the exclusion applies. See Defendants' Request for Judicial Notice, Ex. B ("Baynham Second Amended Complaint"), ¶¶ 1,5, 11, 20, 22, 24.[2] PMI, on the other hand, contends that such a reading completely ignores the "in fact" terminology contained within the exclusion, which term requires that there be a final adjudication or jury verdict factually establishing an unlawful profit or advantage prior to the exclusion's applicability. At the very least, asserts PMI, *some* admissible evidence factually establishing PMI's gain of an unlawful profit or advantage is necessary.

Resolution of this dispute depends on the meaning of the phrase "in fact," and more specifically on whether the "in fact" terminology within the context of this exclusion requires that some type of factual determination or evidence be present. There is an absence of Ninth Circuit case law on this issue, a fact well noted by the parties in their briefing and during argument. As such, the parties have cited to various out of circuit authorities in support of their competing positions. A review of those cases reflects a split among varying courts.

Defendants rely on Brown & LaCounte LLP v. Westport Ins. Co., 307 F.3d 660 (7th Cir. 2002) and other cases with similar holdings, to support their argument that the phrase "in fact" requires only that the underlying complaint contain allegations of unlawful profit or

---

[2] The parties dispute whether the allegations of the second amended complaint, or third amended complaint, control here. This dispute, however, is not a material dispute for purposes of this discussion, as the allegations regarding RESPA contained in both amended complaints are nearly identical. See id.; see also Defendants' Request for Judicial Notice, Ex. E ("Baynham Third Amended Complaint"), ¶¶ 1-2, 5, 19, 22.

6

advantage. In Brown, the court held that an identical profit advantage exclusion precluded coverage on the basis of the underlying complaint's allegations alone, and rejected the idea that final adjudication is necessary to give meaning to the term "in fact." The Brown court recognized that many courts had found mere allegations of illegal profits insufficient to trigger similar personal profit exclusions, but stated that those cases all involved allegations of breaches of fiduciary duty where the actual illegality of the actions taken or profits received was disputed. See 307 F.3d at 663-64. In Brown, by contrast, the court noted that the underlying complaint "directly and unequivocally allege[d] that Brown reaped an illegal profit." Id.

PMI, for its part, cites to St. Paul Mercury Ins. Co. v. Foster, 268 F. Supp. 2d 1035 (C.D. Ill. 2003), and Am. Chem. Soc'y v. Leadscope, Inc., 2005 WL 1220746 (Oh. App. Ct. 2005), among other cases, for the opposite proposition. These cases held that the "in fact" language contained in identical profit advantage exclusions requires a final adjudication before the exclusion may be applied. See St. Paul Mercury Ins., 268 F. Supp. 2d at 1045; Am. Chem. Soc'y, 2005 WL 1220746 at *11. The courts reasoned that to hold otherwise would render the "in fact" language superfluous, an effect that must be avoided under principles of contract interpretation. This analysis that was also strengthened by the fact that differing provisions in the policies before the courts did *not* include the "in fact" language. See Am. Chem. Soc'y, 2005 WL 1220746 at *12. Both courts reasoned that requiring a final adjudication complied with their duty to read the "in fact" language in the policies as intending to accomplish some purpose. The courts noted the existence of Brown, but found Brown distinguishable, since Brown did not deal with a case in which the underlying allegations involved the illegality of the actions taken or received. St. Paul Mercury Ins., 268 F. Supp. 2d at 1046; Am. Chem. Soc'y, 2005 WL 1220746 at *11-12. Where such allegations are disputed, a final adjudication is necessary to determine whether there was, in fact, any illegal profit or gain obtained.

Defendants contend that Brown should control. First, they assert that in the

7

1 Baynham action, as in Brown, there is no actual dispute over the illegality of any alleged
2 profit or advantage received as a result of the kickback scheme.  To the contrary,
3 defendants claim that the Baynham action clearly alleges that PMI received increased
4 premiums in exchange for the unlawful rendering of services – which receipt of premiums
5 constituted an unlawful profit or advantage in violation of RESPA.  Second, defendants
6 argue that the opposing line of cases relied upon by PMI are off point, since the AISLIC
7 policy here is distinguishable from the policies in those cases.  Specifically, paragraph 13 of
8 the AISLIC policy includes in its subrogation provision the term "judicially determined."  As
9 such, defendants argue, principles of contract interpretation require that "in fact" be read
10 differently from the phrase "judicially determined," which phrase already contemplates the
11 requirement of a final adjudication or final factual determination.

12 In response, PMI asserts that, contrary to the defendants' position, the Baynham
13 action alleged only that PMI engaged in an unlawful kickback scheme by providing *to its*
14 *lender clients* various services and benefits at below-market prices.  It did not allege any
15 unlawful profits or advantages, in the form of premiums or otherwise, *received by PMI*.  For
16 this reason, allegations of an illegal profit are not directly at issue and cases representative
17 of St. Paul Mercury Ins. Co. and Am. Chem. Soc'y, rather than Brown, should control.  As
18 for defendants' argument regarding the phrase "judicially determined," PMI asserts that the
19 language does not actually distinguish this case from prior cases, and that it does not affect
20 the interpretation of the AISLIC policy's exclusion provisions at any rate, since the language
21 is contained within a subrogation clause.

22 On balance, the court is persuaded that the instant case fits more within the
23 contours of the cases cited by PMI than it does within those cited by defendants – e.g.,
24 Brown.  First, it is fundamental that the provisions of an insurance policy should be read
25 according to their "ordinary and popular sense."  See MacKinnon v. Truck Ins. Exch., 31
26 Cal. 4th 635, 647-48 (2003).  The phrase "in fact," when interpreted under this light, refers
27 to something which is put forward as "objectively real" or which can be "objectively verified."
28

See Webster's II New Riverside University Dictionary (1988).  The court finds that the reasoning in cases such as St. Paul Mercury Ins. Co. and Am. Chem. Soc'y, which require an actual adjudication or determination of fact prior to application of the profit or advantage exclusion, more appropriately effectuate the goal of giving the phrase "in fact" its ordinary and popular meaning.  This reasoning is further strengthened by the fact that the phrase "in fact" is not to be found in every exclusion enumerated within the AISLIC policy, a factor that counsels in favor of investing the phrase with some added meaning and by extension, with the added requirement of a final adjudication or determination.  Brown, by contrast, provides no guidance in this regard, as it does not address the specific issue of the term's plain and ordinary meaning, or even the need to construe the term in such a manner in the first place.

Second, contrary to the factual scenario in Brown and similar instead to the factual scenario in St. Paul Mercury Ins. Co. and Am. Chem. Soc'y, the actual illegality of the unlawful profit or advantage at issue here – i.e., the increased premium payments – *is* disputed.  Although defendants assert that the underlying Baynham complaint directly alleges PMI's receipt of an illegal profit or advantage by way of an unlawful kickback scheme, the Baynham complaint does not, in actuality, *directly* allege PMI's illegal profit or advantage.  Rather, by defendants' own admission, the underlying complaint alleges only the illegality of PMI's alleged provision of certain services in exchange for business referrals.  See UF 10, 12.  Accordingly, the illegality of the profits or advantages received from PMI's purported actions has yet to be resolved, per the allegations of the complaint itself.  Moreover, as PMI points out, PMI has consistently denied that it has partaken in any illegal activity in violation of RESPA – which would include the unlawful receipt of a profit or advantage.  See PMI's Opposition to Defendants' Motion re Unlawful Profit Exclusion at 10:24-26.  Thus the illegality of PMI's purported conduct is itself in dispute, and Brown and its progeny should not, and do not, apply.

Finally, the court notes that many of the cases defendants rely on to support

9

1  application of the profit or advantage exclusion based on mere allegations, while ultimately
2  upholding similar exclusions, nonetheless either require or rest upon factual evidence or
3  judicial findings.  See, e.g., Nicholls v. Zurich Am. Ins. Group, 244 F. Supp. 2d 1144, 1160
4  (D. Col. 2003) (finding existence of personal profit or advantage as "supported by the
5  evidence"); Gardner v. Cumis Ins. Soc'y, 582 So.2d 1094, 1096 (1991) (applying personal
6  profit or advantage exclusion where underlying defendant "admitted that he accepted ...
7  kickbacks from his supervisor"); see also Jarvis Christian Coll. v. Nat'l Union Fire Ins., 197
8  F.3d 742 (5th Cir. 2000) (affirming district court's finding *of fact* post-bench trial that
9  underlying defendant had gained a personal advantage, thereby triggering profit or
10 advantage exclusion) (emphasis added).

11       For these reasons, the court declines to apply the profit or advantage exclusion on
12 the basis of the Baynham allegations alone.  In so holding, the court is not unmindful of
13 defendants' argument that a separate rule of interpretation – that which requires the court
14 to avoid a construction of a provision that would render other provisions mere surplusage –
15 is also at issue here.  See, e.g., Boghos v. Certain Underwriters at Lloyd's of London, 36
16 Ca. 4th 495, 503 (2005) (setting forth general principles of contract interpretation).
17 Specifically, defendants argue that the court cannot read the phrase "in fact" to mean a final
18 adjudication or judicial determination, as this would render the phrase "judicially
19 determined" in paragraph 13 of the policy surplusage.

20       The court agrees with defendants that in order to give meaning to both phrases
21 within the AISLIC policy, they cannot both be construed as referring to the same thing.
22 Else, the policy would have included the same term in both provisions.  Agreement with this
23 position, however, does not preclude a finding that the "in fact" terminology requires more
24 than the assertion of mere allegations.  This is because, when read according to its
25 ordinary and popular meaning, the phrase "judicially determined" necessarily limits any final
26 adjudication or factual determination to one that is made by the judiciary, whereas the term
27 "in fact" includes adjudications or determinations that are not made judicially, and is
28

10

therefore broader in scope. In short, the court holds that the term "in fact" within the context of the exclusion here should be read to require *either* a final adjudication, including a judicial adjudication, *or* at a minimum, at least some evidentiary proof that the insured reaped an illegal profit or gain.

This construction not only serves the purpose of giving meaning to the "in fact" language while still reconciling the "judicially determined" language, but also finds support, as indicated above, in relevant case law. See also Alstrin v. St. Paul Mercury Ins. Co., 179 F. Supp. 2d 376, 398 (D. Del. 2002) (holding profit or advantage exclusion applicable only if allegations of illegal profit or advantage are made in underlying complaint and proof exists that such illegal profit or advantage actually occurred). Indeed, the Alstrin court explicitly stated that a determination whether the profit or advantage exclusion applies cannot be based solely on the "basic allegations" themselves, but must also focus on the elements of the causes of action alleged, and only *if proven*, will the exclusion apply due to an illegal profit or gain. See id. at 400-01.

Accordingly, for all the above reasons, the court hereby holds that, in order for the profit or advantage exclusion contained in section 4(a) of the AISLIC policy to apply, defendants must demonstrate, through proof of either evidentiary facts or a final adjudication, that the underlying Baynham complaint arose out of, is based upon, or attributable to, an unlawful profit or advantage to which PMI was not legally entitled.

Applying this holding to the facts of this case, the court finds the profit or advantage exclusion inapplicable. Defendants rely solely on the allegations of the Baynham complaint, which reliance is misplaced and insufficient for the reasons just enunciated. And as PMI points out, defendants have failed to introduce any evidence whatsoever that PMI actually reaped an illegal profit or advantage. As such, there are no grounds upon which the exclusion may be applied. This result is further buttressed by the fact that it is dubious whether the Baynham complaint ever alleged an illegal profit or advantage in the first place; as mentioned above, while the complaint alleged the illegality of PMI's provision of services

11

to lenders in exchange for business referrals, the complaint nowhere alleged the receipt of an illegal profit or advantage – by way of increased premiums or otherwise – on PMI's part. The closest the complaint comes to doing so is by making the off-point allegation that the plaintiff class was injured "through the payment of premiums" to PMI. See Baynham Second Amended Complaint, ¶ 24; Baynham Third Amended Complaint, ¶ 2.

In sum, given the defendants' lack of evidence and untenable allegations, the court finds that defendants have not proven the applicability of the profit or advantage exclusion. Accordingly, the court GRANTS summary judgment to PMI on this issue, and DENIES summary judgment as to defendants.

### 2. Crime or Fraud Exclusion

PMI seeks a declaration that the crime or fraud exclusion does not apply. This exclusion precludes coverage for any claim "arising out of, based upon or attributable to the committing in fact of any criminal or deliberate fraudulent act." See AISLIC Policy, section 4(b). In support of their opposing arguments on this point, the parties resurrect the identical arguments they raised with respect to the profit advantage exclusion, focusing on the meaning of the phrase "in fact," and on whether defendants must prove a criminal or fraudulent act on PMI's part, or may simply rest on allegations of such in the underlying Baynham complaint.

The same analysis employed by the court with respect to the profit or advantage exclusion applies here, and compels the same result. In sum, for the reasons described above, the "in fact" terminology contained within the crime or fraud exclusion must be read to require proof of either evidentiary facts supporting a criminal or fraudulent act, or a final adjudication regarding the same. Defendants here have similarly failed to introduce any proof of either, relying solely on the allegations of the underlying Baynham complaint. Again, this reliance is insufficient.

Accordingly, summary judgment is GRANTED in favor of PMI on the issue whether the crime or fraud exclusion applies.

### 3. Prior Knowledge Exclusion

Finally, PMI contends that the prior knowledge exclusion does not apply to bar coverage. This exclusion precludes from coverage any claim "alleging any Wrongful Act which, as [of] the Continuity Date set forth in Item 5 of the Declarations, any Insured knew or could have reasonably foreseen could lead to a Claim." See AISLIC Policy, section 4(e). The parties agree that, in order for the exclusion to apply, defendants must demonstrate that as of April 10, 1998, PMI had knowledge of a wrongful act such that it could have reasonably foreseen the Baynham action's filing, thereby leading to a claim under the AISLIC policy.

Defendants fail to do so here. They present no extrinsic evidence whatsoever that PMI could have reasonably known as of April 10, 1998, that its wrongful acts would lead to either the Baynham claim, or any claim. Instead, defendants attempt to work backwards from the Baynham complaint, essentially arguing that the fact that wrongful acts were alleged as of the filing of the Baynham complaint creates a material dispute as to whether the acts alleged were known to PMI prior to April 10, 1998. Yet those allegations do not set forth any specific time period reaching back to April 10, 1998 or prior. Without this at the very least, defendants cannot discharge their burden of demonstrating a material dispute on the question whether the prior knowledge exclusion applies.

Accordingly, summary judgment is GRANTED in favor of PMI on the issue whether the prior knowledge exclusion applies.

\* \* \*

In conclusion, the court notes that its decision to grant summary judgment in favor of plaintiff on all exclusions, and to deny it as to defendants (as to the profit advantage exclusion) results in large part from defendants' failure to come forward with any affirmative evidence or proof. They have preferred to rest on their legal arguments alone, rather than offering up any evidentiary support for their position in the event the court finds – as it has – in favor of PMI on the legal issues, thereby requiring some evidentiary showing on

1 defendants' part. The court is unaware whether this failure is due to the parties' inability to
2 take discovery, or mere unwillingness to do so. Regardless, the court's end result is
3 dictated by well-established principles that required defendants to go beyond the pleadings
4 and "set forth specific facts showing that there is a genuine issue for trial" once PMI, under
5 the legal standard enunciated above, pointed out the absence of evidence to support
6 defendants' arguments in favor of the above exclusions. See, e.g., Fed. R. Civ. Proc.
7 56(e); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Since defendants failed
8 to make this showing, PMI "is entitled to judgment as a matter of law." See Celotex, 477
9 U.S. at 323.

### C. Collusive Nature of Baynham Settlement

PMI also moves for summary judgment on the issue whether the Baynham settlement and the filing of the third amended complaint in conjunction with the same was collusive. PMI argues that defendants have utterly failed to come forward with any dispositive evidence of collusion.

PMI is correct. Defendants' sum total of evidence is as follows: several communications between themselves and PMI's attorneys regarding the settlement, in which PMI's attorneys stated their belief that, despite winning summary judgment, they were vulnerable to a new lawsuit alleging state claims and additional legal theories based on the same factual allegations; statements that the settlement was in part to ensure that PMI would see no further litigation from the plaintiffs in any form on any claim; and the fact that the third amended complaint only included three causes of action, two of which were new state claims. See Ballati Declaration re PMI's Motion for Partial Summary Judgment re Unlawful Profit, Ex. C; Quinn Declaration in Opposition to PMI's Motion for Partial Summary Judgment re Unlawful Profit, Ex. A at 68:11-69:19; B at 49:24-50:3, 51:20-22. From this limited evidence, defendants argue that it "is a reasonable inference that PMI consented to provide leave for the filing of the third amended complaint because the addition of non-RESPA claims would increase the likelihood that the insurers would provide

coverage to PMI." See Opp. Br. at 20:25-28.

Even taking all the above evidence as true, it is simply not evidence of collusion, nor does it give rise to the inference of collusion. It merely demonstrates, if anything, PMI's good faith belief in the settlement in exchange for a general release of all claims. This conclusion is further strengthened by the fact that PMI has introduced evidence demonstrating that the idea of filing the third amended complaint did not even originate with PMI, but rather with another co-defendant in the underlying Baynham action. See Stoll Reply Declaration re PMI's Motion for Partial Summary Judgment re Unlawful Profit, ¶ 2, Ex. A, at 45:8-46:11; 86:17-87:1; ¶ 3, Ex. B at 98:16-21. Moreover, defendants are past the point at which they may successfully argue "inferences" – they must argue disputed "facts" based on an evidentiary record.

Accordingly, summary judgment is GRANTED in favor of PMI on the issue of collusion.

### D. **Baynham Action and Settlement as Covered "Loss"**

Defendants seek a declaration that the underlying Baynham settlement does not constitute "loss" within the meaning of the AISLIC policy. The AISLIC policy defines "loss" as "damages, settlements and Defense Costs," but excludes from that loss: (1) "fees, commissions, or other compensation for any Professional Services rendered or required to be rendered by the Insured or that portion of any settlement or award in an amount equal to such fees, commissions, or other compensation"; (2) "the multiplied portion of multiplied damages"; and (3) matters that may be deemed uninsurable under the law pursuant to which this policy shall be construed". See AISLIC Policy, section 2(g). Defendants contend that these three exclusions cover any and all damages that the Baynham plaintiffs would have been able to claim as a result of their underlying RESPA claim – damage amounts that were necessarily represented in the Baynham settlement amount. Accordingly, defendants argue that the settlement falls outside the policy's coverage.

PMI takes issue with this, pointing out that the Baynham settlement was reached not

only in consideration of the RESPA claim, but also the state law claims alleged in the underlying third amended complaint. As such, the whole of the Baynham settlement is covered "loss" unless defendants successfully prove the applicability of any of the above exclusions, and defendants' underlying premise – that the settlement may be allocated among specific causes of action based on recoverable damages – is erroneous. Moreover, PMI asserts that even if the AISLIC policy does permit or require allocation of the settlement among specific causes of action alleged in Baynham, the portion of any settlement paid in consideration of the RESPA claim is not covered by any of the above exclusions.

Preliminarily, the court notes that PMI is correct that under the terms of the AISLIC policy, defendants are obligated to pay the whole of any "loss" arising from a qualifying "claim," except for any portion of the settlement that defendants prove is excluded from the policy's definition of "loss." See AISLIC Policy, sections 1, 2(g). Specifically, this means that the whole of the Baynham settlement is covered as a "loss" under the policy unless defendants can demonstrate that some portion of the settlement is covered by a loss exclusion.

Defendants attempt to do so by arguing that the Baynham settlement necessarily included as RESPA damages the amounts the Baynham plaintiffs were overcharged for their mortgage insurance premiums, amounts which are excluded as loss under the policy. However, as to this, there is a material dispute. Specifically, PMI disputes that the settlement included any amounts equal to or even based on the premium payments made by the Baynham plaintiffs. PMI argues that this fact makes sense, given that the Baynham plaintiffs never made any direct payments to PMI in the first place, but only to the lenders. PMI also disputes whether the Baynham settlement was in consideration for dismissal of the RESPA claim alone or for state law claims as well, the resolution of which necessarily impacts any finding as to whether any portion of the Baynham settlement – whether based on RESPA or otherwise – is excluded from the policy's definition of "loss."

16

In short, a trial is necessary to resolve these issues. Accordingly, summary judgment on the issue whether the underlying <u>Baynham</u> action sought to recover a qualifying "loss" under the AISLIC policy is DENIED as to defendants.

### E. Conclusion

For the foregoing reasons, summary judgment is GRANTED in favor of PMI as to (1) application of the profit or advantage exclusion; (2) application of the crime or fraud exclusion; (3) application of the prior knowledge exclusion; and (4) the collusion issue. This holding disposes of defendant AISLIC's fifth affirmative defense, and defendants Federal and Columbia's tenth, eleventh, and twelfth affirmative defenses.

Summary judgment is DENIED as to all defendants regarding (1) application of the profit or advantage exclusion; and (2) the issue whether the <u>Baynham</u> settlement sought to recover "loss" within the meaning of the policies at issue.

The parties are also ordered to attend a case management conference in the instant action so that a trial date on remaining issues may be set. The case management conference shall be held on **May 11, 2006** at **2:30 p.m.**, in Courtroom 3, 17th Floor, Federal Building, 450 Golden Gate Avenue, San Francisco, California.

**IT IS SO ORDERED.**

Dated: March 29, 2006

PHYLLIS J. HAMILTON
United States District Judge

17